# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN

JAMES S. POWELL, II, et al.,
individually and on behalf of all others
similarly situated,

      Plaintiffs,

      v.

GENERAL MOTORS LLC,

      Defendant.

Case No.: 4:25-cv-10479-SDK-KGA

---

## THE *POWELL* PLAINTIFFS' BRIEF IN SUPPORT OF MOTION FOR APPOINTMENT OF MIKE ARIAS AND TIMOTHY G. BLOOD AS CO-INTERIM CLASS COUNSEL, AND APPOINTMENT OF THEIR <u>PROPOSED LIAISON COUNSEL AND LEADERSHIP STRUCTURE</u>

///

///

///

# **TABLE OF CONTENTS**

I.   INTRODUCTION................................................................................................1

II.  RELEVANT TIMELINE OF EVENTS .......................................................3

III. LEGAL STANDARD .......................................................................................5

IV. ARGUMENT......................................................................................................6

   A. The Work the *Powell* Group Has Done in Identifying and Investigating

      Potential Claims in the Action .................................................................6

   B. Counsel's Experience in Handling Class Actions, Other Complex Litigation,

      and the Types of Claims Asserted in the Action...................................8

   C. Counsel's Knowledge of the Applicable Law ...................................12

   D. The Resources that Counsel Will Commit to Representing the Class..........14

   E. Other Factors Including Proposed Leadership's Efforts to Coordinate and

      Cooperate Weigh in Favor of Powell's Proposed Leadership Structure......14

   F. The Proposed Liaison Counsel and Plaintiffs' Steering Committee.............16

V. CONCLUSION .................................................................................................18

## **TABLE OF AUTHORITIES**

**Cases**

*Easton v. Bailey*,

    2013 WL 12323847 (C.D. Cal. Jan. 4, 2013)........................................................7

*Ekin v. Amazon Servs., LLC*,

    2014 WL 12028588 (W.D. Wash. May 28, 2014)................................................7

*In re A-Line Staffing Sols. Data Sec. Incident Litig.*,

    2024 U.S. Dist. LEXIS 218817 (E.D. Mich. Nov. 21, 2024) ..............................5

*Moradi v. Adelson*,

    2011 WL 5025155 (D. Nev. Oct. 20, 2011)..........................................................8

*Speerly v. GM, LLC*,

    143 F.4th 306 (6th Cir. 2025)..............................................................................15

**Statutes**

Fed. R. Civ. P. 23 ....................................................................................................5

**Other Authorities**

5 Moore's Federal Practice - Civil § 23.120 (2025)................................................7

Manual for Complex Litigation (Fourth) § 10.221................................................16

Manual for Complex Litigation (Fourth) § 21.272................................................16

## <u>ISSUE PRESENTED</u>

Issue: Whether the Court should appoint Plaintiffs' Proposed Co-Interim Class Counsel where they performed substantial investigative work to bring the first-filed lawsuit months ahead of GM's recall and other lawsuits; have extensive experience and knowledge of the applicable law; and have the willingness, ability, and capacity to devote all necessary resources to ensure the effective and efficient prosecution of this litigation through trial and appeal.

Answer: Yes.

## <u>INDEX OF MOST CONTROLLING AUTHORITIES</u>

Fed. R. Civ. P. 23(g)

## I.    INTRODUCTION

Many months before any other case was filed, the *Powell* case was investigated, a complaint was drafted and filed, and litigation began. The cases that have followed resemble *Powell*, and in some cases, are verbatim copies. Under the factors for appointment of interim class counsel, the lawyers associated with *Powell* should be appointed to continue to lead this litigation and that structure should be lean and efficient. Specifically, the *Powell* Plaintiffs propose a two-person Co-Lead structure, led by Mike Arias from the *Powell* case and Timothy G. Blood from the *Houchin* case as Interim Co-Lead Class Counsel, and Nicholas A. Coulson as Liaison Counsel. Leadership should be given the authority to coordinate, delegate, and manage the litigation, including by seeking the assistance of other lawyers to assist in the litigation. Messrs. Arias and Blood have decades of experience successfully and efficiently prosecuting complex class actions and consumer protection cases and their firms have the resources necessary to advance this case through trial and appeal.

Effective management of this consolidated litigation requires a clear, streamlined leadership framework. This case does not warrant a large leadership team, which unnecessarily leads to overworking the case and the attendant delays in its prosecution. A two-person co-lead structure is the most efficient and cost-effective approach. Providing co-lead counsel sufficient authority to draw on the talents and resources of other lawyers in the litigation ensures the matter will be well-litigated,

but not over litigated. All substantive work will either be performed directly by or delegated under the supervision of Mr. Arias and Mr. Blood, ensuring coordinated strategy, accountability, and the elimination of duplicative effort. Liaison Counsel and, if needed, a Plaintiffs' Steering Committee, will support Co-Lead Counsel by handling defined responsibilities, with assignments allocated based on expertise and efficiency. This task-oriented model is designed to conserve class resources, promote efficiency, and ensure that every aspect of the litigation is managed by the attorneys best suited to the task. A detailed description of responsibilities for each role is set forth in the proposed order attached as Exhibit 1.

To ensure the matter is efficiently and effectively litigated, the *Powell* Plaintiffs also request the Court include in the leadership order requirements shown to promote effective and efficient litigation, such as periodic time reporting.

This proposal most readily meets the factors set forth Fed. R. Civ. P. 23(g)(1)(A) to select interim class counsel. While the known applicants plainly have the experience, knowledge, and resources sufficient to properly litigate this matter, one factor makes the *Powell* Plaintiffs stand above the rest. Rule 23(g)(1)(A)(i) requires the Court to consider "the work counsel has done in identifying or investigating potential claims in the action." The *Powell* action was investigated and filed long before any other case was filed, and before GM acknowledged an issue and commenced a recall (insufficient though it may be). The work the lawyers

2

associated with *Powell* have performed, coupled with their history of smart, effective, and efficient litigation, weigh heavily in favor of appointing *Powell*'s Proposed Leadership Team.

## II.   RELEVANT TIMELINE OF EVENTS

Beginning in early 2025, *Powell*'s counsel learned of the problems Mr. Powell and others were having with their vehicles. They began a thorough and wide-ranging investigation that included obtaining and reviewing Powell's relevant documents, analyzing GM's technical service bulletins, analyzing consumer complaints submitted to NHTSA, and obtaining and examining GM and other documents to analyze the nature of the defect.

That investigation culminated in the filing of this action on February 18, 2025.

After the complaint was filed, Counsel continued its investigation. Counsel conducted numerous interviews with other GM vehicle owners with the same problem. They collected and analyzed the information and relevant documents from these other class members as part of their ongoing investigation. In late April 2025—65 days after *Powell* was filed—GM for the first time acknowledged the defect and issued a recall. Concerned about the adequacy of the recall based on the work they had done, *Powell*'s Counsel continued its investigation, including with their hired consulting expert. They determined that the recall is too narrow in scope and its proposed remedy is insufficient.

*Powell*'s Counsel then prepared an amended complaint that incorporated their investigatory work and added nine new plaintiffs, identifying further details and the root cause of the defect, documenting the serious and costly experiences of the Plaintiffs, and addressing the deficiencies of the recall. (See, e.g., ECF No. 15, ¶¶ 30–392.) The *Powell* Plaintiffs assert claims on behalf of a nationwide class and under multiple state consumer protection statutes and warranty laws, including those of Arizona, California, Florida, Illinois, Michigan, Missouri, Montana, New Jersey, New York, Ohio, Oregon, Pennsylvania, South Carolina, Tennessee, Virgina, and Washington. (ECF No. 15, ¶¶ 393–394, 409 - 869.)

*Powell* is the first filed class action seeking redress of the L87 engine defect, after which numerous other plaintiffs began to file suit. After similar suits were filed, the *Powell* team spearheaded early efforts to coordinate and organize the larger litigation. From the beginning, they successfully encouraged other cases to agree to a transfer to this district and be consolidated with this case, thereby avoiding the delay and costs associated with multidistrict litigation coordination practice. Throughout the process, the *Powell* Plaintiffs' counsel coordinated with defense counsel concerning coordination, scheduling, and laying the groundwork for possible settlement discussions once the cases were transferred and leadership issues resolved.

Now, a total of twelve related cases—all but one of which were filed after the recall—have been transferred and related to *Powell*. The *Powell* plaintiffs request

that their proposed leadership team be appointed to continue to lead this litigation.

## III.   LEGAL STANDARD

Fed. R. Civ. P. 23(g)(1) governs the appointment of class counsel. It provides

in relevant part:

> In appointing class counsel, the court:
>
> (A) must consider:
>
>> (i)   the work counsel has done in identifying or investigating potential claims in the action;
>>
>> (ii)  counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
>>
>> (iii) counsel's knowledge of the applicable law; and
>>
>> (iv)  the resources that counsel will commit to representing the class;
>
> (B) may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class[.]

Fed. R. Civ. P. 23(g)(1).

"[P]ursuant to Fed. R. Civ. P. 23(g)(3), courts 'may designate interim counsel

to act on behalf of a putative class before determining whether to certify the action

as a class action.' When there are multiple applicants for class counsel, 'the court

must appoint the applicant best able to represent the interests of the class.'" *In re A-*

*Line Staffing Sols. Data Sec. Incident Litig.*, 2024 U.S. Dist. LEXIS 218817, at *4

(E.D. Mich. Nov. 21, 2024) (quoting Fed. R. Civ. P. 23(g)(2)) "Fed. R. Civ. P.

23(g)(1) governs this inquiry[.]" *Id.*

Here, for those known to be applying for a leadership position, three of the Rule 23(g) factors—experience, knowledge of the law, and resources—are met for this case. All known applicants are capable in those respects. It is the factors set out in Rule 23(g)(1)(A)(i) and (B) that sets the *Powell* case apart and compels the appointment of their proposed team. The *Powell* Plaintiffs are far ahead of the others in the work they have done. The proposed leadership also has a demonstrated ability to collaborate effectively with others. The *Powell* Plaintiffs' proposed leadership team should be appointed.

## IV.   ARGUMENT

### A.   The Work the *Powell* Group Has Done in Identifying and Investigating Potential Claims in the Action

Often, multiple related class action cases are filed within hours or days of each other, requiring a court to attempt to determine who has done the work in the case and therefore should be appointed interim class counsel. This is not one of those situations. *Powell* was filed months before any other case and long before GM announced a recall. As reflected in the more than 100 paragraphs in the original complaint detailing the factual allegations and the proposed class's right to recovery, the original complaint was the result of a lengthy and thorough pre-suit investigation.

The *Powell* group's investigation uncovered the nature of the defect in the 6.2L L87 V8 engine before GM acknowledged the problem and issued its recall. Once the recall was announced, the *Powell* group's investigation continued to determine

whether the recall adequately addressed the problem, which included working with their retained consultant. They found it did not. The scope of the recall was too limited and the remedy was insufficient. The results of these investigative efforts are detailed in the operative complaint, which includes not only allegations about the cause of the defect, but describes in detail each Plaintiff's troubling experience caused by the defect. (*See, e.g.*, ECF No. 15, ¶¶ 30–184.)

All counsel have already benefitted from the work done. For example, the *Rittereiser* Complaint (filed 90 days after *Powell*) is a near verbatim copy of the *Powell* complaint. Even the *Hernandez* complaint (the only complaint other than *Powell* filed before the recall announcement but nonetheless 44 days after *Powell*) is thin on allegations, with only 16 paragraphs of factual background. (ECF No. 1, ¶¶ 13–122; *see also* 5 Moore's Federal Practice - Civil § 23.120 (2025) ("If, however, the applying attorney filed a simple complaint, or filed a complaint that was merely copied from another similar action, and did not devote any substantial efforts to the identification and investigation of potential claims before filing the complaint, the fact that the applicant filed the action should not weigh as heavily in the appointment decision.").

Under these facts, federal courts give deference to the first-filed case's proposal when, as here, they are qualified to handle the action. *See, e.g., Easton v. Bailey*, 2013 WL 12323847, at *11 (C.D. Cal. Jan. 4, 2013) (appointing as lead

counsel the firms that were first to file, among consideration of other factors); *Ekin v. Amazon Servs., LLC*, 2014 WL 12028588, at *4 (W.D. Wash. May 28, 2014) (considering who filed the first complaint, among other factors, when selecting interim class counsel among competing applicants); *Moradi v. Adelson*, 2011 WL 5025155, at *3 (D. Nev. Oct. 20, 2011) ("[A]s the Moradi Plaintiffs were the first to file suit it would be appropriate to assign [their counsel] as lead counsel.") (internal citations omitted).

### B. Counsel's Experience in Handling Class Actions, Other Complex Litigation, and the Types of Claims Asserted in the Action

The Proposed Co-Leads are recognized leaders in class actions and other complex litigation with extensive knowledge of consumer protection laws.

### *Mike Arias, Arias Sanguinetti Wang & Team LLP*

Mr. Arias is the founding and managing partner of Arias Sanguinetti Wang & Team LLP. During his 40-year career, he has litigated and tried matters throughout the United States in both state and federal court. Over the course of four decades, he has litigated and tried numerous consumer protection and complex class actions to verdict, giving him a rare perspective on how legal theories translate into proof at trial and on appeal. He is among the first plaintiffs' attorneys in the country to have successfully tried a class action over twenty years ago. He has tried several more class actions since then and has continued to shepherd high-stakes class and mass actions through all stages of litigation. Mr. Arias has served as lead, co-lead, or

8

liaison counsel in countless matters, including serving as co-liaison counsel in one of the largest settlements in American history. Attached as Exhibit 2 is his firm's résumé.

For example, Mr. Arias was appointed co-liaison counsel for the plaintiffs in the University of Southern California/Dr. George Tyndall litigation on behalf of over 700 women who were sexually abused and assaulted by the disgraced USC OB/GYN, which involved over 30 plaintiff law firms. Ultimately, a historic $852 million settlement was reached, the largest known settlement in a sexual abuse case in U.S. history at that time. Mr. Arias was appointed to the Executive Committee in the consolidated class actions regarding the UCLA Health Systems data breach (*Adlouni v. UCLA Health Systems Auxiliary*, Los Angeles Superior Court Lead Case No. BC589243). Among other duties, he was responsible for settlement negotiations, which ultimately resulted in a $7.5 million settlement.

Mr. Arias has extensive experience in consumer protection class actions. In terms of automotive defect litigation, Mr. Arias's experience includes serving as co-lead counsel in *Kesselman v. Toyota Motor Sales, U.S.A., Inc.*, No. 2:21-cv-06010-TJH-JC (C.D. Cal.), where he successfully prosecuted claims that Toyota concealed a Bluetooth "echo defect" that renders hands-free phone systems virtually unusable, with a proposed class action settlement currently pending final approval. Additionally, in *Gutierrez v. Honda North America, Inc.*, No. 5:09-cv-01517 (C.D.

Cal.), Mr. Arias secured a class action settlement in excess of $4.1 million for claims that certain Honda vehicles were equipped with a defective side airbag system. In *Fixler v. Toyota Motor Sales, U.S.A.*, No. 2:10-cv-03124 (C.D. Cal.), Mr. Arias and his team achieved a class action settlement that included extended warranties and provided reimbursements to certain drivers for claims alleging Toyota failed to disclose defects in high-intensity discharge headlights on Prius vehicles. Additional cases involving some of the other consumer protection class actions that Mr. Arias has handled are listed on his firm's resume.

### *Timothy Blood, Blood Hurst & O'Reardon, LLP*

Timothy Blood is the managing partner of Blood Hurst & O'Reardon, LLP ("BHO"), a firm that specializes in the prosecution of a wide variety of consumer protection class actions throughout the country, including trying complex class actions to verdict. Recently, he successfully tried a rare civil RICO class action, one of only a handful ever tried and a first-of-its-kind consumer fraud class action. He has achieved record-setting recoveries across a diverse range of fields, including automobile cases, demonstrating expertise and unparalleled dedication. He has tried over half a dozen class actions, a feat few can claim. He has litigated automobile class actions for several decades against nearly all of the major automobile companies, including GM, Ford, BMW, Mercedes, Toyota, and Honda. He has secured one of the largest automobile class action recoveries in history. The $3.4

billion settlement required the replacement of dangerous rusted vehicle frames with new vehicle frames at no cost to the vehicle owners (a savings of nearly $15,000 per vehicle). He has secured many appellate victories that have materially advanced the type of consumer protection claims at issue here.

Mr. Blood and his firm are highly selective about which cases they file, choosing to focus their practice on substantive litigation of class actions and avoiding an increasingly common "sue and settle" model and the "pile on" model of joining in numerous multidistrict litigation litigations. His goal is to obtain meaningful relief for consumers in class actions. This approach also allows Mr. Blood to commit his time and his firm's resources to litigating significant class actions like this one.

Mr. Blood has been appointed class counsel in dozens of cases, including leadership roles in high-profile complex cases. Some of these include as co-lead counsel in the California statewide coordinated action involving Toyota vehicles prone to sudden unintended acceleration, *In re Toyota Motor Cases*, JCCP No. 4621 (Cal. Super. Ct., Los Angeles Cnty.); class counsel in *Warner v. Toyota Motor Sales*, Case No. 2:15-cv-02171-FMO-(FFMx) (C.D. Cal, Hon. Fernando M. Olguin), which resulted in a $3.4 billion class recovery; class counsel in *Turrey v. Vervent, Inc*., No. 3:20-cv-697-DMS-AHG (S.D. Cal., Hon. Dana Sabraw), a civil RICO class action tried to verdict; as class counsel in *Montera v. Premier Nutrition, Inc.* No. No. 3:16-CV-06980 RS (N.D. Cal., Hon. Richard Seeborg) all other related cases; as a member

of the Plaintiffs' Steering Committee in *In re Johnson & Johnson Talcum Powder Products Marketing, Sales Practices, and Prods. Liab. Litig.,* MDL No. 2738 (D.N.J.); and as class counsel in *In re Skechers Toning Shoes Prods. Liab. Litig.,* MDL No. 2308 (W.D. Ky., Hon. Thomas B. Russell).

Mr. Blood's experience spans a broad and diverse spectrum of consumer protection cases. His firm's resume details the various types of class actions he has handled, some of his court-appointed leadership positions, the record-setting recoveries, the many appellate decisions in the area he has obtained, the groundbreaking work achieved through litigation with agencies such as the Federal Trade Commission in a public-private partnership rarely duplicated, and the many forums in which he has fought for consumer rights.

Mr. Blood enjoys a reputation for integrity, civility, and an ability to bring people together. Mr. Blood has been an invited speaker at various attorney organizations about how to practice law with civility. He is the founding member of the San Diego ESI Discovery Forum, consisting of judges and practitioners, past president of the Consumer Attorneys of San Diego, past executive board member of Consumer Attorneys of California, a member of the Federal Bar Association, and a member and team leader of the Welsh Inn of the American Inns of Court..

### C.     Counsel's Knowledge of the Applicable Law

As their resumes demonstrate, both Mr. Arias's and Mr. Blood have a strong

command of the relevant laws and their application in automobile cases and related areas of consumer protection, including defective products. For example, in *Gutierrez v. Honda North America, Inc.* (C.D. Cal.), Mr. Arias achieved a $4.1 million class settlement arising from allegations that defective airbags breached warranties of merchantability. In *Fixler v. Toyota Motor Sales, U.S.A.* (C.D. Cal.), he prosecuted a product defect class action against Toyota involving vehicle safety systems, which included claims for breach of warranty and consumer protection violations. In *Kesselman v. Toyota Motor Sales, U.S.A., Inc.* (C.D. Cal.), a consumer class action involving a concealed Bluetooth "echo defect," Mr. Arias advanced consumer protection claims on behalf of Toyota owners.

Mr. Blood has tried consumer protection class actions, advanced the relevant laws through appellate work, and successfully litigated numerous automobile cases. His work in *Warner v. Toyota Motor Sales* (C.D. Cal) is record-setting. There, Mr. Blood obtained a $3.4 billion settlement for owners and lessees in a nationwide automotive defect class action that fully addressed the dangerous condition and saved each class member thousands of dollars. He recently tried to verdict and began trial in a second related consumer protection case involving some of the same type of consumer protection statutes at issue here. In that case, *Montera v. Premier Nutrition Corp.* (N.D. Cal.), a record setting settlement has been reached.

Across these and other matters, Mr. Arias and Mr. Blood have successfully

enforced consumer protection statutes and express and implied warranty protections on behalf of consumers against corporations including major automakers, securing meaningful relief for consumers. (See Exhibits 2 and 3.)

      **D.**     **The Resources that Counsel Will Commit to Representing the Class**

      Mr. Arias, along with his firm, Arias Sanguinetti, and Mr. Blood, along with his firm, Blood Hurst & O'Reardon are able to commit their significant resources to this case. Both firms have successfully recovered billions of dollars of recoveries for their clients. Their financial strength and stability allow them to advance the significant costs associated with automotive defect litigation, including expert witness fees, technical investigations, document production, and extensive discovery. This has already been demonstrated by the work done in this case. The firms also have substantial human resources dedicated to this litigation.

      **E.**     **Other Factors Including Proposed Leadership's Efforts to Coordinate and Cooperate Weigh in Favor of Powell's Proposed Leadership Structure**

      Shortly after *Powell* was initiated, Powell's Counsel began working cooperatively with counsel for GM regarding scheduling, responsive pleadings, stipulations. They also began exploring the process to prepare for settlement discussions. As more actions were filed, Powell's Counsel eventually began coordinating with GM's Counsel to ensure these actions were transferred to this district and to avoid the delay a multidistrict litigation proceeding would cause. Both

Mr. Arias and Mr. Blood worked to achieve voluntary case transfers.

When the necessity for a leadership structure became apparent, Mr. Arias and Mr. Blood made efforts to self-organize. Mr. Arias initiated a conversation with the *Houchin* group and Mr. Arias and Mr. Blood agreed that a two-attorney co-lead structure made the most sense for this case. While this case is complex, it is not the type of case that requires a large leadership structure. While large leadership structures are fine where needed, they become a burden in cases that do not require them. *Powell's* co-counsel includes firms who are well-qualified to be 23(g) Counsel independent from or in addition to Mr. Blood; however, they have all put personal ambitions aside and support giving Mr. Blood a co-lead role over themselves in a two-attorney co-lead structure because they believe it is in the best interests of the class and will keep the litigation management lean and efficient.[1]

---

[1] The Levitt Group's characterization as representing a majority of plaintiffs misses the mark. *Powell's* Counsel chose their named plaintiffs from among many. A class action does not require naming as many people as possible to be plaintiffs; rather it requires naming plaintiffs that are adequate to represent the class. Additionally, each firm representing Powell could have coordinated to individually file four separate lawsuits with plaintiffs from various states to "run up the numbers," but that type of litigation tactic does not make sense and should not be encouraged. Furthermore, closer analysis shows that the *Powell* suit and the six lawsuits filed by the Levitt Group are not nearly as far apart regarding who is currently represented as suggested. *Powell* includes plaintiffs from four states (Illinois, Tennessee, Oregon, Arizona) not covered by any plaintiff in the six lawsuits filed by the Levitt Group as well as a small Consumer Fraud Multi-State subclass that includes, *inter alia*, three states (New Jersey, Ohio, South Carolina) not covered by the other group. So *Powell* has seven-states not covered by the Levitt Group, while the Levitt Group has eight states not covered by *Powell*. But several of those eight states in the Levitt Group

Finally, while Messrs. Arias and Blood are well-qualified on their own merits, in the alternative only, if the Court prefers more than two co-leads, the Court should appoint three attorneys, not four or more, in which case Mr. Arias and Mr. Blood, and whoever else the Court deems appropriate, should be appointed as co-leads, with the remaining proposed *Powell* Leadership Team.

### F.      The Proposed Liaison Counsel and Plaintiffs' Steering Committee

The Manual for Complex Litigation (Fourth) §§ 10.221, 21.272, recognizes the court's discretion to designate lead counsel, liaison counsel, and committees to promote efficiency and coordination. As detailed in Exhibit 1, the structure proposed here will effectively and efficiently manage the case. The Proposed Co-Leads will be responsible for directing and managing all pretrial briefing and discovery and assigning work related to these tasks, coordinating expert retention and development, settlement discussions, managing the litigation fund and overall coordination, and preparing for trial. Co-Lead counsel will also have discretion to form a Plaintiffs' Steering Committee, if needed to help coordinate efforts to share information and develop and conduct discovery and other tasks to effectively litigate the case. Leadership counsel

---

may present difficulties for the case given the state laws at play in this case. Relatedly, the Court has directed that a consolidated amended class action complaint should be filed after the Court appoints Interim Counsel, and proposed Co-Lead counsel intends to spend significant time determining who should be a named plaintiff in that amended complaint—particularly in light of the Sixth Circuit's recent decision in *Speerly v. GM, LLC*, 143 F.4th 306 (6th Cir. 2025) (en banc).

should be given the authority to draw on the resources of other firms such as, for example, co-counsel in the *Powell* case, who have extensive experience as lead or co-lead counsel in class actions, have knowledge and experience in this case, and have demonstrated their ability to effectively and efficiently move the litigation forward.

Liaison Counsel, as an experienced Michigan class action attorney who has been appointed as class counsel in many dozens of cases, will act as the point person to the Court, assist in the prosecution of the litigation, assist with trial preparation, and ensure that all discovery, filings, and notices are appropriately served and received. Nicholas A. Coulson is the founder and principal of Coulson P.C., a Detroit-based law firm whose four attorneys specialize in class and complex litigation. Mr. Coulson has been appointed as lead, co-lead, or sole class counsel in dozens of class actions in courts across the country. He has extensive experience litigating in this District and is well-versed in the Court's local rules. His successful recoveries for classes include *McKnight v Uber Techs, Inc*, No. 14-cv-05615- JST, 2017 US Dist. LEXIS 124534, at *23 (ND Cal August 7, 2017) ($32.5 million nationwide class settlement) and *Dykehouse v The 3M Company*, No. 1:18-cv-01225 (WD Mich) ($11.9 million settlement for Michigan residents whose municipal water had been contaminated by PFAS). His firm's resume is attached as Exhibit 4.

///

///

17

## V.    CONCLUSION

Mr. Arias and Mr. Blood's work to date, combined with their experience, knowledge of the applicable law, and commitment of resources, demonstrates that they are best positioned to represent the Class. Federal courts routinely give deference to counsel in the first-filed case, and such deference is particularly warranted here, where the first-filed action preceded GM's recall—an effort that, as shown above, was inadequate. The Proposed Co-Leads, together with Liaison Counsel and members of the Plaintiffs' Steering Committee, will devote all resources necessary to prosecute this case effectively. They have the willingness, ability, and capacity to ensure steady progress of the litigation and the experience to manage any procedural scenario, including trial and appeal. For these reasons, Plaintiffs respectfully request that the Court grant this Motion.

Dated: August 26, 2025              Respectfully submitted,

By:  /s/ Mike Arias
Mike Arias
M. Anthony Jenkins
**ARIAS SANGUINETTI WANG &**
**TEAM LLP**
6701 Center Drive West, 14th Floor
Los Angeles, CA
T: (310) 844-9696
F: (310) 861-0168
mike@aswtlawyers.com
anthony@aswtlawyers.com

Timothy G. Blood
Thomas J. O'Reardon II

Paula R. Brown
Adam M. Bucci
**BLOOD HURST & O'REARDON, LLP**
501 West Broadway, Suite 1490
San Diego, California 92101
Telephone: 619-338-1100
tblood@bholaw.com
toreardon@bholaw.com
pbrown@bholaw.com
abucci@bholaw.com

Kevin P. Green
Daniel S. Levy
**GOLDENBERG HELLER & ANTOGNOLI, P.C.**
2227 South State Route 157
Edwardsville, IL 62025
618-656-5150
kevin@ghalaw.com
daniel@ghalaw.com

Christopher J. Petri
**BYRON CARLSON PETRI & KALB, LLC**
411 Saint Louis Street
Edwardsville , Illinois 62025
Telephone: (618) 655-0600
Facsimile: (618) 655-4004
cjp@bcpklaw.com

Nicholas A. Coulson (P78001)
Julia G. Prescott
**COULSON P.C.**
300 River Place Drive, Suite 1700
Detroit, Michigan 48207
T: (313) 645-0045
E: nick@coulsonpc.com
E: jprescott@coulsonpc.com

*Attorneys for Plaintiffs James S. Powell, II,*

19

*Craig Perry, Tiffany Ruszenas, Evonne Henderson, Kevin Wright, Eric Krush, Troy Popielarz, Jonathan Bennett, Larry Bensel, and Kevin Fenstermaker*